# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1379

_____

| | | |
|---|---|---|
| Linda D. Bond, | * | |
| | * | |
| Plaintiff - Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the Western |
| Cerner Corporation, | * | District of Missouri. |
| | * | |
| Defendant - Appellee. | * | |

_____

Submitted: September 12, 2002

Filed: November 6, 2002

_____

Before BYE, RICHARD S. ARNOLD, and BEAM, Circuit Judges.

_____

BYE, Circuit Judge.

Linda Bond appeals the district court's[1] adverse grant of summary judgment upholding the plan administrator's denial of her claim for total disability benefits under her former employer's employee welfare benefit plan.  We affirm.

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

Bond began working for Cerner Corporation on December 12, 1994, as a clinical marketing specialist. Cerner offered its employees total or partial disability benefits in accordance with its employee welfare benefit plan as follows:

## What Constitutes Total Disability?

You are considered totally disabled and eligible for total disability benefits:

During the first 36 months for which benefits are payable and during the applicable elimination period - if you are unable to perform the substantial and material duties of your regular occupation and do not engage in any other work for wage or profit for which you are or become qualified by education, training or experience.

After the first 36 months of benefit payments - if you are unable to perform the substantial and material duties of any occupation for which you are or become qualified by education, training or experience.

## Partial Disability Benefits

You can receive monthly benefits if your disability allows you to return to your regular job in a reduced capacity or on a part-time basis. Partial Disability benefits are payable in the same manner as the total disability benefit less a percentage of your monthly earnings during partial disability.

Appellant's App. 55.

The policy defines total and partial disability as follows:

"Partial Disability," means that the Insured Employee, because of Injury or Sickness, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) gainfully employed in his regular occupation on a partial and/or part-time basis.

"Total Disability" means that, during the Elimination Period and the Insured Employee Occupation Period . . . the Insured Employee, because of Injury or Sickness, is:

(1) continuously unable to perform the substantial and material duties of his regular occupation;

(2) under the regular care of a licensed physician other than himself; and

(3) not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

After the Monthly Benefit has been payable for the Insured Employee Occupation Period [as it was in Bond's case] . . . "Total Disability" means that, because of Injury or Sickness, the Insured Employee is:

(1) continuously unable to perform the substantial and material duties of any occupation for which he is or becomes qualified by education, training or experience; and

(2) under the regular care of a licensed physician other than himself.

Id. at 53-54.

The plan does not define "continuously unable to perform the substantial and material duties of [his or any] occupation."

It is undisputed Bond became temporarily totally disabled in April, 1996, and drew short-term disability benefits. She returned to her job on a part-time basis in September, 1996, and was paid partial disability benefits for over three years until her position was eliminated and she was terminated in December, 1999. Thereafter,

Bond applied for and was denied total disability benefits because she was able to engage in part-time work. The plan administrator (Cerner) also denied benefits claiming Bond was able to perform full-time, low-level work.

Bond argued her ability to engage in part-time work did not mean she was unable to meet the definition of total disability, i.e., "continuously unable to perform the substantial and material duties of any occupation." Indeed, in order to obtain partial disability benefits Bond had shown she was "continuously unable to perform the substantial and material duties of her occupation" and "gainfully employed in her regular occupation on a partial and/or part-time basis." Therefore, Bond argued she could be employed part-time and still be continuously unable to perform the substantial and material duties of an occupation. Furthermore, Bond pointed out that the definition of total disability for the first 36 months included a prohibition against part-time work in any occupation, but the prohibition was eliminated for the period after 36 months, thereby implicitly indicating an intention to allow partial or part-time work.

The district court rejected Bond's arguments finding she failed to grasp the significance of the single word distinction between the definition of partial disability and total disability, i.e., "her" [occupation] versus "any" [occupation]. The district court determined that a substantial and material part of Bond's occupation was the ability to work eight hours a day, five days a week. The court further determined she had proven she was only able to work part-time in her occupation, and was therefore, "continuously unable to perform the substantial and material duties of her occupation." But the court determined Bond had failed to meet her burden of proving "that a 'material and substantial' duty of all occupations . . . is to work eight hours a day, five days a week . . .." (Emphasis in original). In other words, the district court found Bond did not qualify for total disability benefits because, even though her occupation required full-time employment, she failed to prove all occupations required full-time employment.

We agree the district court properly denied Bond's request for total disability benefits, but affirm on an alternative basis. See Cooksey v. Delo, 94 F.3d 1214, 1218 (8th Cir. 1996) (holding we may affirm the district court on any basis supported by the record).

## II.

The parties agree the plan at issue is governed by the provisions of the Employee Retirement Income Security Act (ERISA) 29 U.S.C. §§ 1001-1461. We review the denial of ERISA benefits under a de novo standard unless the plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. Delk v. Durham Life Ins. Co., 959 F.2d 104, 105 (8th Cir. 1992) (citing Firestone Tire & Rubber Co. v Bruch, 489 U.S. 101, 115 (1989)). Bond asserts, and Cerner does not contest, that the plan contains no such grant of discretion, and therefore, we review the district court's grant of summary judgment de novo.

The parties agree Bond qualified for and received partial disability benefits for over 36 months. The parties also agree Bond was "continuously unable to perform the substantial and material duties of her regular occupation" *and* able to work part-time. Building on these facts, Bond argues her receipt of partial disability benefits proves a claimant can work part-time and still qualify for total disability benefits, i.e., be continuously unable to perform the substantial and material duties of any occupation.

It is the plan's second definition of total disability, applicable after receipt of benefits for 36 months, that applies to Bond's claim for total disability benefits. To obtain benefits under this definition, Bond must show an inability to "continuously . . . perform the substantial and material duties of any occupation . . .." Cerner contends, and the district court found, Bond does not meet this definition because she

-5-

is able to work on a part-time basis. Bond argues, however, that if she previously worked part-time and was considered "continuously unable to perform the substantial and material duties of her occupation," part-time work should not preclude a finding she is "continuously unable to perform the substantial and material duties of any occupation." Bond's argument has some appeal. If part-time work does not preclude a finding she was continuously unable to perform *her* occupation, why should part-time work preclude a finding she is continuously unable to perform *any* occupation? Especially if, as suggested by the district court, "continuously unable to perform the substantial and material duties" means unable to work eight hours a day, five days a week.

Bond's argument is strengthened by the fact that the plan definition of total disability during the first 36 months contains an express prohibition against working part-time. On the other hand, the definition of total disability after 36 months contains no such prohibition. As Bond argues, if the drafters of the plan intended part-time employment to disqualify a claimant from receiving total disability benefits after 36 months, they possessed the ability to include such language in the plan.

Bond's construction of the plan language, however, leads to results clearly not intended by the plan. If Bond's construction is accepted, she is due a greater level of benefits after termination than she was while working part-time. Under her construction, the relevant inquiry for purposes of determining the benefit level is the availability of work, not ability to work. Because this is a disability plan such a construction is untenable. Furthermore, the plan distinguishes between "partial disability" and "total disability." Bond's construction would render the distinction meaningless.

The district court denied Bond's claim for benefits because she failed to prove a substantial and material part of all occupations is the ability to work eight hours a day, five days a week. We believe it is unnecessary to impose such an onerous

burden on Bond, and we doubt any claimant could ever prove *all* occupations require full-time employment. We also see some appeal in Bond's argument that if "continuously unable," as used in the context of partial disability, means able to work part-time, the identical meaning should attach when used to define total disability. Nevertheless, we believe the district court properly resolved the claim in favor of the plan.

When construing the language of an ERISA plan we begin by examining the language of the plan documents. DeGeare v. Alpha Portland Indus., 837 F.2d 812, 816 (8th Cir. 1988). "Each provision should be read consistently with the others and as part of an *integrated whole*." Id. (emphasis added). If the plan is deemed ambiguous, extrinsic evidence may be considered. Id. But any ambiguities should be construed against the drafter only as a last step. Id.

The construction advanced by Bond ignores the requirement that all parts of the contract be given effect. McOsker v. Paul Revere Life Ins. Co., 279 F.3d 586, 588 (8th Cir. 2001). Bond asks us to construe the plan in such a manner as to find her qualified for total disability benefits versus partial disability benefits depending upon whether she is working, as opposed to her level of disability. According to Bond, she could continue to work in her occupation on a partial or part-time basis and receive partial disability benefits or she could quit or be terminated and work on a partial or part-time basis in another occupation and receive total disability benefits. Such a result would be absurd and would render the partial disability provisions superfluous.

In McOsker we interpreted the provisions of a plan containing a total disability clause and a residual disability clause. Id. at 588. The plan provided total disability if the claimant was "unable to perform the important duties of his occupation," and residual disability when the claimant was "unable to perform one or more of the important duties of his occupation." Id. We determined the plan language required someone claiming partial disability to show he could not perform *some* of the

-7-

important duties of his occupation, and someone claiming total disability benefits to show he was unable to perform *all* of the important duties of his occupation. Id. We recognized the plan document did not contain such express language, but read the language into the contract because any other construction would render the residual disability clause meaningless. Id. A similar construction must be placed on this contract.

We believe, in the context of the partial disability definition, "continuously unable to perform the substantial and material duties of his occupation" means the claimant is unable to continuously perform *some* of those duties. In such instances, the plan provides for partial disability if the claimant is gainfully employed in his regular occupation on a partial or part-time basis. In the context of total disability during the first 36 months, a claimant must show he is unable to continuously perform *all* of "the substantial and material duties of his occupation." Finally, the plan provides total disability benefits beyond 36 months only when the claimant is able to show he is continuously unable to perform *all* the duties of any occupation. Such a construction allows the partial disability and total disability clauses to be read together as part of an integrated whole and comports with reason and authority.

III.

For the reasons stated herein, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.