# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 10-1781

———————

James B. Kitterman, Diane Kitterman,     *
                                            *

             Appellees,              *

                                            *    Appeal from the United States

        v.                             *    District Court for the

                                            *    Northern District of Iowa.

Coventry Health Care of Iowa, Inc.,      *

                                            *

             Appellant.              *

———————

Submitted: December 15, 2010
Filed: February 16, 2011

———————

Before WOLLMAN, MURPHY, and COLLOTON, Circuit Judges.

———————

WOLLMAN, Circuit Judge.

In the fall of 2008, Diane Kitterman's[1] family physician informed her that she had ovarian cancer. He advised that she try to have the cancer removed and, to that end, referred her to the Mayo Clinic in Rochester, Minnesota.

———————

[1] Diane's husband, James, was also named as a plaintiff in the state-court complaint that the Kittermans filed in this action. Neither that—nor any other—court filing identifies any cause of action he may have against Coventry Health Care of Iowa, Inc. (Coventry). Therefore, for ease of reference, we refer to the plaintiff-appellees, collectively, as Diane Kitterman or Kitterman.

At that time, Kitterman was participating in a health insurance benefit plan administered by Coventry. Prior to scheduling her procedure at the Mayo Clinic, Kitterman contacted a customer-service representative at Coventry to discuss her plan's coverage. The representative told Kitterman that the Mayo Clinic was an "out-of-network" or "non-participating" provider and that coverage thus would be limited to out-of-network benefits, as set forth in the plan's three-page schedule of benefits. A chart on page two of that schedule indicated that the annual "Out-of-Pocket Maximum" for an individual was $8,000 for non-participating providers but only $4,000 for participating providers. See Addendum to Appellant's Br., at 27. The representative also advised Kitterman that the University of Iowa Hospitals and Clinics were in-network providers of the same services Kitterman sought from the Mayo Clinic.

Kitterman asked the Coventry representative whether she might be required to pay more than $8,000 should she choose to schedule her procedure at the Mayo Clinic, but the representative merely referred Kitterman back to the schedule of benefits.

Kitterman—who had read the first two pages of the schedule of benefits, but not the third[2]—determined that her liability for the Mayo Clinic procedure was capped at $8,000 and had it done at a total cost of $44,458.99. Only later did she learn that a more nuanced definition of "Out-of-Pocket Maximum" could be found on page three of the schedule of benefits. That definition reads:

> Out-of-Pocket - The individual Out-of-Pocket Maximum is a limit on the amount You must pay out of Your pocket for specified Covered Services in a calendar year, as specified in this Schedule of

---

[2]Kitterman did not read the third page because she did not expect a third page. As she put it, the blank space at the bottom of page two "does not invite the participant to continue to turn the page." See D. Ct. Order of Mar. 15, 2010, at 6.

Benefits. . . . Coinsurance and Deductible amounts apply to your Out-of-Pocket Maximum. *Copayments and Charges that exceed our Out-of-Network Rate for Non-Participating Providers do not apply to your Out-of-Pocket Maximum.*

Addendum to Appellant's Br., at 28 (emphasis in original). "Out-of-Network Rate" is defined on that same page:

Out-of-Network Rate - The Out-of-Network Rate is the maximum amount covered by Us for approved out-of-network services. This rate will be derived from either a Medicare based fee schedule or a percent of billed charges as determined by Us. *You are responsible for Charges that exceed our Out-of-Network Rate for Non-Participating Providers. This could result in you having to pay a significant portion of your claim. Balances above the Out-of-Network Rate do NOT apply to your Out-of-Pocket Maximum.*

Id. (emphasis in original).[3]

Coventry paid $20,670.83 toward the procedure (its out-of-network rate) but declined to pay more. That left Kitterman responsible for $23,788.16, nearly $16,000 more than the $8,000 she was expecting to pay.

---

[3]Similar language appears in the evidence of coverage, which warns participants that when receiving services from non-participating providers: (1) Coventry's "allowed amount will be the lesser of billed charges or the Out of Network Rate"; (2) participants "are liable for any difference between the billed charge and [Coventry's] allowed amount"; and (3) "[t]his difference does not apply to [the] Out-of-Pocket Maximum." See D. Ct. Order of Mar. 15, 2010, at 10. It goes on: "You are responsible for Charges that exceed our Out-of-Network Rate for non-participating providers. This could result in You having to pay a significant portion of Your claim. Balances above the Out-of-Network Rate do NOT apply to Your out-of-pocket maximum." See id., at 11.

After her administrative appeals with Coventry were unsuccessful, Kitterman filed this lawsuit in state court, which Coventry removed to the federal district court. Kitterman argued to the district court that Coventry should be bound by the chart found on the first two pages of the schedule of benefits, which appeared to cap Kitterman's liability at $8,000. As the district court observed, "[r]unning through all of the Kittermans' contentions is their assertion that the Schedule of Benefits is a summary plan description (SPD)," as that term is described in 29 U.S.C. § 1022, and that "because the Schedule of Benefits fails to meet all of the requirements of an SPD . . . it is a 'faulty' SPD," on which Kitterman relied to her detriment. D. Ct. Order of Mar. 15, 2010, at 17-18. The district court, however, expressly declined to address Kitterman's summary-plan-description theory, see id., at 25, concluding instead that a reasonable plan participant would take the term "Out-of-Pocket Maximum" at face value as a term of "common and ordinary meaning" and expect to pay no more than that maximum. It further concluded that the plan language purporting to exclude out-of-network charges above the out-of-network rate from the out-of-pocket maximum was ambiguous and therefore a reasonable plan participant would not have understood that it might increase their out-of-pocket expense above the out-of-pocket maximum. It therefore ordered that Coventry pay "all charges in excess of $8,000." D. Ct. Order of Mar. 15, 2010, at 25.

## I.

"The Employee Retirement Income Security Act of 1974 (ERISA) permits a person denied benefits under an employee benefit plan to challenge that denial in federal court." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). We review *de novo* the district court's interpretation of the plan documents. Melvin v. Yale Indus. Prods., Inc., 197 F.3d 944, 947 (8th Cir. 1999) ("With respect to the interpretation of an ERISA plan which does not give the administrator discretionary authority to construe the plan's terms (as in the instant case), we review the district court's interpretation *de novo*."). We begin, of course, "by examining the language

-4-

of" those documents, keeping in mind that "[e]ach provision should be read consistently with the others and as part of an integrated whole." Bond v. Cerner Corp., 309 F.3d 1064, 1067-68 (8th Cir. 2002) (emphasis omitted). Our task is to "interpret the terms of the plan by giving the language its common and ordinary meaning as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words to mean." Adams v. Cont'l Cas. Co., 364 F.3d 952, 954 (8th Cir. 2004) (quotation marks omitted).

In the district court's view, the "common and ordinary meaning of 'Out-of-Pocket Maximum' to a reasonable Plan participant . . . is the greatest amount that the Plan participant will have to pay for medical services per calendar year." D. Ct. Order of Mar. 15, 2010, at 19-20. But there is more to the plan documents than the words "Out-of-Pocket Maximum." Specifically, both the schedule of benefits and the evidence of coverage provide that charges in excess of Coventry's "Out-of-Network Rate do NOT apply to" Kitterman's out-of-pocket maximum. Page three of the schedule of benefits explains: "*You are responsible for Charges that exceed our Out-of-Network Rate for Non-Participating Providers. This could result in you having to pay a significant portion of your claim.*" Addendum to Appellant's Br., at 28 (emphasis in original).

Read together, these and other provisions in the plan documents temper the effect of the words "Out-of-Pocket Maximum."[4] We therefore conclude that a reasonable plan participant, reviewing the policy as a whole, would understand that

---

[4]We note also that the phrase "Out-of-Pocket Maximum" is capitalized, and that the evidence of coverage begins with a warning that "[m]any words used in this Agreement have special meanings" and "will appear capitalized and are defined for You." This puts a reasonable participant on notice that "Out-of-Pocket Maximum"—like the other capitalized words in the plan documents—is a term with a "special," perhaps non-obvious, meaning.

out-of-network charges above Coventry's out-of-network rate would not be applied toward satisfaction of the participant's "Out-of-Pocket Maximum."

The district court was not persuaded that a reasonable participant would understand that the language "do not apply to" could increase the out-of-network, out-of-pocket expenditure above $8,000, finding "that the bold language in these definitions is, at best, ambiguous." D. Ct. Order of Mar. 15, 2010, at 22. In its view, the phrase "do not apply to your Out-of-Pocket Maximum" must not mean "do not 'count in' or are 'excluded from'" that maximum, because that construction of the word "apply" is "irreconcilably contrary to the common and ordinary meaning of 'Out-of-Pocket Maximum.'" Id. at 23. We disagree.

When read in context with accompanying statements in the plan documents warning that the participant is "responsible for Charges that exceed [Coventry's] Out-of-Network Rate for non-participating providers," which "could result in [the participant] having to pay a significant portion of [the] claim," we believe a reasonable participant would reach only one conclusion: Out-of-network charges above the out-of-network rate may result in out-of-pocket expenditures above the "Out-of-Pocket Maximum."

Indeed, the district court itself—discussing a provision excluding copayments and penalties from the out-of-pocket maximum—acknowledged that both it and Kitterman understood the words "do not apply to" to mean "do not count in" or "are excluded from" the out-of-pocket maximum. See id. at 17 ("[Kitterman] point[s] out that the Schedule of Benefits *does* expressly state on page two that '[p]enalties do not apply to out-of-pocket maximums,' so that Coventry clearly knew how to and could indicate when charges did not apply to out-of-pocket maximums." (alteration in original)), and at 21 ("Even though the last two sentences of § 1.7 [of the evidence of coverage] do explain that the participant 'will be responsible for office visit Copayments throughout the Calendar Year,' and that 'Copayments and financial

penalties do not apply to Your Out-of-Pocket Maximum,' these limitations do not suggest that 'Out-of-Pocket Maximum' is riddled with exclusions . . . ."). We are not persuaded that "do not apply to" should be construed one way with respect to copayments and financial penalties, and another way with respect to charges that exceed Coventry's out-of-network rate.

Kitterman, of course, never read the limitations with respect to her "Out-of-Pocket Maximum" found on page three of the schedule of benefits. But when interpreting the terms of the plan, we cannot ignore provisions or rewrite the plan documents to conform with what Kitterman actually read. See Adams v. Cont'l Cas. Co., 364 F.3d at 954; Adams v. LTV Steel Mining Co., 936 F.2d 368, 371 (8th Cir. 1991) ("[O]ur role is to assure the plan is fairly administered, not to rewrite plan provisions."). We must consider the documents as an "integrated whole," and "give[] effect" to "all parts of the contract." Bond, 309 F.3d at 1068. And the language in the plan documents is clear (and in bold type): "Charges that exceed [the] Out-of-Network Rate for Non-Participating Providers do not apply to [the] Out-of-Pocket Maximum." Addendum to Appellant's Br., at 28 (emphasis omitted).

Because we are required to view the plan language in its totality, and because the term "Out-of-Pocket Maximum" is specifically defined not to include out-of-network charges above the out-of-network rate, we conclude that a reasonable plan participant would give the term "Out-of-Pocket Maximum" the meaning ascribed to it by the plan.

## II.

For these reasons, we vacate the judgment of the district court and remand for further proceedings.

_____