# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2832

_____

Richard Angevine, Individually
and on behalf of all others
similarly situated,

        Appellant,

   v.

Anheuser-Busch Companies Pension
Plan; Anheuser-Busch
Companies, Inc. , a Delaware
Corporation; Anheuser-Busch
Inbev, N.V., a Belgian Corporation,

        Appellees.

\*
\*
\*
\*
\*
\*
\*  Appeal from the United States
\*  District Court for the Eastern
\*  District of Missouri.
\*
\*
\*
\*
\*
\*
\*

_____

Submitted: April 14, 2011
Filed: July 22, 2011

_____

Before RILEY, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Richard Angevine appeals from the district court's[1] dismissal of his claim for benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1101 et seq. The district court held that Angevine had failed to exhaust his administrative remedies. Because we agree that an administrative remedy was available to Angevine and that pursuing it would not have been futile, we affirm.

I.

Angevine is a salaried employee of Busch Entertainment Corporation (BEC), which before 2008 was a subsidiary of Anheuser-Busch Companies, Inc. (ABC). ABC provides its salaried employees and the salaried employees of its subsidiaries with a benefits plan, the Anheuser-Busch Companies Pension Plan (the Plan), which is governed by ERISA.

The Plan includes a "Change in Control" provision, which makes Plan participants eligible for enhanced retirement benefits if their employment within the Controlled Group is "involuntarily terminated" within three years of a change in control. For these employees, the Plan presumes an additional five years of credited service and five years of age for purposes of determining pension benefits (the "+5/+5 enhancement"). The Plan specifies that ABC is the "Company" and the "Controlled Group" consists of "[t]he controlled group of corporations, trade, and businesses . . . of which the Company is a part, as determined from time to time."[2]

---

[1] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

[2] We consider all provisions of the Plan, even those portions not included in Angevine's pleadings, because his complaint stated that the provisions of the Plan were the grounds for his claim. Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

ABC was bought in 2008 by InBev, N.V., which changed its name to Anheuser-Busch InBev, N.V. (A-B InBev). The parties agree that this acquisition constituted a "Change in Control" for purposes of the Plan. In 2009, A-B InBev agreed to sell BEC to Blackstone Capital Partners V, L.P. On November 27, 2009, before the sale went through, Angevine received an email captioned, "Salaried Employee Transition Frequently Asked Questions." The email stated in part:

**What is the effect on the sale on my participation in the pension plan?**

You will stop accruing benefits in the Anheuser-Busch Salaried Employee Pension Plan as of the date of the sale transaction. You are eligible for a pension distribution at any time after age 55. . . .

**When can I begin receiving my pension benefit?**

You may begin receiving your pension at any time after age 55. If you elect to start receiving your pension benefit before age 65, the amount of your benefit may be reduced. The amount of the reduction depends on your years of vesting service and your age on the date of the closing of the sale of BEC to Blackstone Group. . . .

**Am I eligible for the +5/+5 enhancement applicable to involuntary terminations of employment within 3 years of the InBev change of control?**

You will not be eligible for the +5/+5 enhancement upon the date of your separation from active participation in the Anheuser-Busch Salaried Employees' Pension Plan or at the time of your termination of employment with BEC after the sale is finalized.

BEC was sold to Blackstone on December 1, 2009.

On the day of the sale, Angevine filed an ERISA class action against BEC, A-B InBev, the Plan, and State Street Bank & Trust Company, the Plan's trustee, under 29

U.S.C. § 1132(a)(1)(B).[3] Angevine claims that he and other class members were entitled to the +5/+5 enhancement because the sale of BEC to Blackstone involuntarily terminated their employment with the Controlled Group and occurred within three years of the Change in Control that had occurred when ABC was bought by InBev. Angevine sought an award of early retirement benefits that included the +5/+5 enhancement, pre- and post-judgment interest dating back to December 1, 2009, an injunction requiring that he be given the +5/+5 enhancement in determinations of his future benefits, and various class-specific relief.

## II.

The district court granted the Appellees' motion to dismiss on the ground that Angevine failed to exhaust his plan remedies. Angevine appeals, arguing that the email he received on November 27, 2009, excused him from the exhaustion requirement and, in the alternative, that no administrative remedy existed. "Exhaustion is a threshold legal issue we review de novo." Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997).

ERISA allows a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Before filing in federal court, however, a claimant must exhaust the administrative remedies required under the particular ERISA plan. Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010). This judicially created exhaustion requirement serves many important purposes, including "giving claims administrators an opportunity to correct errors, promoting consistent treatment of claims, providing a non-adversarial dispute resolution process, decreasing the cost and

---

[3] Angevine also brought a claim for breach of fiduciary duty under section 1132(a)(3). However, the district court dismissed the claim, and Angevine does not appeal that dismissal.

time of claims resolution, assembling a fact record that will assist the court if judicial review is necessary, and minimizing the likelihood of frivolous lawsuits." Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001). We excuse the exhaustion requirement only when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue. Brown v. J.B. Hunt Transp. Serv., Inc., 586 F.3d 1079, 1085 (8th Cir. 2009).

Angevine argues that repudiation constitutes a third exception to the exhaustion requirement. According to Angevine, when an ERISA plan or its fiduciary repudiates a beneficiary's rights under a plan, the beneficiary can bring a civil action in federal court without first filing an application for benefits under the plan. Angevine is correct that an ERISA claim accrues "when there has been a repudiation by the fiduciary which is clear and made known to the beneficiary," even if the repudiation occurs before a claim for benefits is filed. Union Pac. R.R. Co. v. Beckham, 138 F.3d 325, 330-31 (8th Cir. 1998) (internal quotation omitted). Statutory accrual, however, is a distinct question from whether the judicially created exhaustion requirement is excused. Cf. id. at 332 n.4. Our case law is clear that Angevine's claim can proceed only if he has pled sufficient facts to show either futility or lack of administrative remedy.

Angevine's allegations do not show that it would have been futile for him to pursue an administrative remedy under the Plan. "The futility exception is narrow—the plan participant must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubts that an appeal will result in a different decision." Brown, 586 F.3d at 1085 (internal quotation omitted). At the time he filed this lawsuit, Angevine had made no attempt to pursue an administrative remedy and the Plan administrator had not denied any similar claims. Angevine's sole basis for alleging futility is the email he received on November 27. Even if the email provides some indication of the position the Plan administrator would take if Angevine had pursued an administrative remedy, it does not show with certainty that the Plan

administrator would have denied Angevine's claim for the +5/+5 enhancement upon either initial review or appeal.

Angevine's allegations show that the Plan provided him with an administrative remedy. The Plan requires that "[a]n application for distribution shall be a condition precedent to any distribution under this Plan" and details how to submit an application for distribution. Under the Plan's plain language, applications for any distribution, regardless of whether for current or future benefits, fall within the Plan's claims procedure. Thus, because Angevine seeks either current or future benefits, the Plan provides an administrative procedure for his claim. The facts alleged in Angevine's complaint show neither futility nor the lack of an administrative remedy, and we conclude that he is required to exhaust his administrative remedies under the Plan before he can bring a civil action in federal court.

## III.

Accordingly, we affirm the district court's dismissal of Angevine's claim for failure to exhaust.

_____