# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1093

_____

Terri M. Yates

*Plaintiff - Appellee*

v.

Symetra Life Insurance Company

*Defendant - Appellant*

_____

No. 22-2257

_____

Terri M. Yates

*Plaintiff - Appellee*

v.

Symetra Life Insurance Company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 20, 2022
Filed: February 23, 2023

_____

Before SHEPHERD, KELLY, and GRASZ, Circuit Judges.
_____

KELLY, Circuit Judge.

After her husband died of a heroin overdose, Terri M. Yates sought accidental death benefits under an employer-sponsored benefit plan governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461. The plan's insurer, Symetra Life Insurance Company, denied her claim, and Yates sued. The district court[1] granted summary judgment in Yates's favor. Symetra now appeals, arguing that Yates's suit is barred by her failure to exhaust internal review procedures and that her husband's death otherwise falls under an exclusion to coverage. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

At the time of her husband's death, Yates worked at Phelps County Bank and participated in the company's employee benefit plan (the Plan). Her husband was also covered under the Plan as a dependent. The Plan was issued and managed by Symetra and governed by ERISA. Its various benefits were summarized in an "Employee Benefits Insurance Certificate" issued to covered employees, and that Certificate included the policies and Plan language at issue in this case.[2]

_____

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

[2]The district court found that the "Employee Benefits Insurance Certificate" and a "Group Insurance Policy" issued to Phelps County Bank by Symetra's predecessor company in 1981 "constitute[d]" the ERISA plan documents at issue here. See 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan [governed by ERISA] shall be established and maintained pursuant to a written instrument."). Neither party challenges that finding on appeal. Accordingly, we will treat those documents as providing all of the relevant terms of Yates's employee benefit plan. See U.S. Airways, Inc. v. McCutchen, 569 U.S. 88, 92 n.1 (2013).

Among the Plan's benefits was an "Employee Accidental Death and Dismemberment Insurance" policy, under which Symetra paid a "benefit amount" if a covered individual "suffer[ed]" certain losses, including a "[l]oss of life," due to "accidental bodily injury." A qualifying injury must have been "a sudden and unforeseen event, definite as to time and place." The policy also included seven exclusions to coverage, including one, as is relevant here, that excluded "any loss caused wholly or partly, directly or indirectly by . . . intentionally self-inflicted injury, whi[le] sane."

On December 20, 2016, Yates's husband was found dead in his bedroom. The parties do not dispute that he died of a heroin overdose. Yates subsequently filed a claim with Symetra for spousal life insurance and accidental death benefits under the Plan. Symetra awarded the former benefits but denied the latter. The company explained in a June 27, 2017 denial letter (the Denial Letter) that "in view of the fact that" Yates's husband's death was caused by his "intentional act of using [h]eroin," Yates was not entitled to accidental death benefits because losses caused by an "intentionally self-inflicted injury" were excluded from coverage.

The Denial Letter further provided that Yates could "request a review" of Symetra's decision by "submit[ting] a written request . . . within 60 days of [her] receipt of th[e] letter." The letter outlined this internal review process in detail and also noted that Yates "ha[d] the right to file a civil action" under ERISA "following completion of" Symetra's "appeal review process." The written Plan documents issued by Symetra make no mention of this internal review process, nor do they provide for any other appeal or review procedures following a denial of benefits.

Yates did not request that Symetra review its denial of her claim. Instead, she brought suit in Missouri state court, alleging breach of contract. Symetra removed her case to federal court, and Yates amended her complaint to assert a denial-of-benefits claim under ERISA, see 29 U.S.C. § 1132(a)(1)(B). Symetra moved for summary judgment, arguing that Yates's failure to exhaust the internal review process described in the Denial Letter precluded her from bringing an ERISA suit.

Symetra argued in the alternative that Yates's claim for accidental death benefits was properly denied under the "intentionally self-inflicted injury" exclusion. The district court initially granted summary judgment to Symetra after concluding that Yates failed to exhaust her administrative remedies. After Yates moved to alter or amend judgment, the district court reversed course, this time concluding that Yates was not required to exhaust administrative remedies before bringing suit and that Symetra's denial of her claim for accidental death benefits was erroneous. The district court vacated its prior dismissal order, denied Symetra's motion for summary judgment, and granted summary judgment, sua sponte, to Yates. Symetra appeals.

## II.

ERISA authorizes a plan participant to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). Before bringing such an action, however, a participant generally "must exhaust the administrative remedies required under [his] particular ERISA plan." Angevine v. Anheuser-Busch Cos. Pension Plan, 646 F.3d 1034, 1037 (8th Cir. 2011); see Chorosevic v. MetLife Choices, 600 F.3d 934, 941 (8th Cir. 2010) ("Where a claimant fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan, his claim for relief is barred."). Symetra concedes that Yates's written Plan documents do not provide for any internal review or appeal procedures that a covered participant may or must exhaust following a denial of a claim for Plan benefits. It argues that Yates's ERISA suit is nonetheless barred because she failed to exhaust the administrative remedies Symetra described in the Denial Letter. "Exhaustion is a threshold legal issue we review de novo." Chorosevic, 600 F.3d at 941 (quoting Kinkead v. Sw. Bell Corp. Sickness & Accident Disability Benefit Plan, 111 F.3d 67, 68 (8th Cir. 1997)).

The requirement that a plan participant exhaust her administrative remedies before bringing a denial-of-benefits claim under ERISA "finds its genesis" in 29 U.S.C. § 1133. Brown v. J.B. Hunt Transp. Servs. Inc., 586 F.3d 1079, 1084 (8th Cir. 2009). That provision provides in relevant part that "every employee benefit

plan" governed by ERISA "shall . . . afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). The statute does not include an express exhaustion requirement. But federal courts, including this one, "have universally construed § 1133 to require exhaustion." Brown, 586 F.3d at 1084; see Heimeshoff v. Hartford Life & Accident Ins. Co., 571 U.S. 99, 102 (2013) ("Courts have generally required participants to exhaust [an ERISA] plan's administrative remedies before filing suit to recover benefits."). We have underscored on several occasions the "many important purposes" this "judicially created exhaustion requirement serves," including "giving claims administrators an opportunity to correct errors," "promoting consistent treatment of claims," and "decreasing the cost and time of claims resolution." Angevine, 646 F.3d at 1037 (quoting Galman v. Prudential Ins. Co. of Am., 254 F.3d 768, 770 (8th Cir. 2001)). Accordingly, "[w]e excuse the exhaustion requirement only when pursuing an administrative remedy would be futile or there is no administrative remedy to pursue." Id.; see Brown, 586 F.3d at 1085.

Here, the district court did not excuse Yates from an otherwise applicable exhaustion requirement. Rather, it concluded that she was not subject to such a requirement in the first place because her written Plan documents do not provide for or describe any appeal or review procedures for her to exhaust. On appeal, Symetra argues that the Denial Letter, which detailed an internal review process she could have used to challenge the company's denial of her claim for accidental death benefits, triggered an exhaustion requirement. We agree with the district court. A participant in an employee benefit plan governed by ERISA is not required to exhaust administrative remedies before challenging a denial of benefits in court when the written plan documents make no mention of any review process or administrative remedies that can be exhausted.

We reach this conclusion for several reasons. First, a review of our cases confirms that the requirement that a plan participant first exhaust her administrative remedies before bringing an ERISA suit has consistently been premised on such

remedies being expressly prescribed in the participant's written plan documents. See Angevine, 646 F.3d at 1037 ("Before filing in federal court, however, a claimant must exhaust the administrative remedies *required under the particular ERISA plan*." (emphasis added)); Chorosevic, 600 F.3d at 941 ("Where a claimant fails to pursue and exhaust administrative remedies *that are clearly required under a particular ERISA plan*, his claim for relief is barred." (emphasis added)); Brown, 586 F.3d at 1084 (same); see also Wert v. Liberty Life Assurance Co. of Boston, Inc., 447 F.3d 1060, 1063 (8th Cir. 2006) ("[W]e hold that exhaustion of *contractual remedies* is required in the context of a denial of benefits action under ERISA *when there is available to a claimant a contractual review procedure . . . .*" (emphasis added)); Galman, 254 F.3d at 770 ("ERISA provides that every plan must provide a benefits appeal procedure . . . . In this circuit, benefit claimants must exhaust this procedure before bringing claims for wrongful denial to court."). That is, we have said that the exhaustion requirement bars a denial-of-benefits claim under ERISA if a plan participant "fails to pursue and exhaust administrative remedies *that are clearly required under a plan*." McKennan v. Meadowvale Dairy Emp. Benefit Plan, 973 F.3d 805, 808 (8th Cir. 2020) (emphasis added). Nowhere have we said that a denial-of-benefits claim is barred by a failure to exhaust administrative remedies when the applicable written plan documents provide for no such remedies.

Second, our conclusion finds support in a recent Sixth Circuit case that addressed the very exhaustion issue Symetra raises here. In Wallace v. Oakwood Healthcare, Inc., 954 F.3d 879 (6th Cir. 2020), an administrator of an employee benefit plan covered by ERISA argued that a plan participant's denial-of-benefits claim was barred by her failure to exhaust administrative remedies, even though the participant's written plan documents "did not describe either the claim review process or an exhaustion requirement." Id. at 885. The plan administrator maintained that it was not required to describe its claims and internal appeal procedures in the written plan documents because those procedures were detailed in a "benefits denial letter" that was sent to the plan participant. Id. at 887. Yet the Sixth Circuit observed that "one of ERISA's central goals is to enable beneficiaries to learn their rights and obligations at any time" by "examining" their written plan

documents. Id. (quoting Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995)). And "[i]n keeping with th[at] intent," the court held that for a plan administrator "to avail itself" of a judicially created exhaustion requirement, "its underlying plan document[s] must—at minimum—detail its required internal appeal procedures." Id. at 888.

Third, we have consistently recognized the primacy of written plan documents when resolving ERISA claims. See Vercellino v. Optum Insight, Inc., 26 F.4th 464, 469 (8th Cir. 2022) ("Courts are instructed to enforce the terms of ERISA plans as they are written."); Admin. Comm. of Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank, 500 F.3d 834, 838 (8th Cir. 2007) ("Among the primary purposes of ERISA is to ensure the integrity of written plans and to protect the expectations of participants and beneficiaries."); see also Heimeshoff, 571 U.S. at 108 (describing ERISA's "focus on the written terms of the plan" as the statute's "linchpin"). ERISA requires that the terms of an employee benefit plan be committed to written plan documents, see 29 U.S.C. § 1102(a)(1), so that plan participants, by reviewing those documents, can "learn their rights and obligations under the plan at any time." Curtiss-Wright Corp., 514 U.S. at 83. Yates's written Plan documents gave her no such opportunity. Requiring Yates to exhaust internal review procedures that cannot be found in the Plan documents would thus render her reliance on those documents largely meaningless in this context. See id. Moreover, "[t]he plan . . . is at the center of ERISA," and the statute's "principal function" is to "protect contractually defined benefits." U.S. Airways, 569 U.S. at 100–01 (quoting Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 148 (1985)). Symetra asks that we impose on Yates a requirement to exhaust remedies that are not in the contract the parties entered. We decline to do so. See Wert, 447 F.3d at 1063 (requiring "exhaustion of *contractual* remedies . . . in the context of a denial of benefits action under ERISA" (emphasis added)).

Finally, our conclusion that Yates is not subject to an exhaustion requirement aligns with ERISA's implementing regulations. See 29 C.F.R. § 2560.503-1(a) (2017) (setting forth "minimum requirements for employee benefit plan procedures

pertaining to claims for benefits by participants and beneficiaries").[3]   Those regulations require that ERISA plans "establish and maintain reasonable procedures governing the filing of benefit claims . . . and appeal of adverse benefit determinations."  Id. § 2560.503-1(b); see id. § 2560.503-1(h)(1) ("Every employee benefit plan shall establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination to an appropriate named fiduciary of the plan, and under which there will be a full and fair review of the claim and the adverse benefit determination.").  A plan's appeal procedures "will be deemed to be reasonable only if," among other requirements, a "description" of those procedures "is included as part of a summary plan description meeting the requirements of 29 CFR [§] 2520.102-3."  Id. § 2560.503-1(b)(2).  The requisite summary plan description must describe, among other things, "[t]he procedures governing claims for benefits[,] . . . applicable time limits, and remedies available under the plan for the redress of claims which are denied in whole or in part."  Id. § 2520.102-3(s).  By failing to provide for post-denial remedies, Symetra's written Plan documents thus do not appear to satisfy the applicable regulations.  See id. § 2560.503-1(b)(2), (h)(1).  And when that is the case, those same regulations provide that a plan participant whose claim for benefits has been denied "shall be deemed to have exhausted the administrative remedies available under the plan," allowing that participant to immediately seek relief in court.[4]  Id. § 2560.503-1(l)(1);

_____

[3]We cite to the regulations in force at the time Yates's claim for benefits was denied but note that the relevant regulations have remained unchanged to today.

[4]We note that 29 C.F.R. § 2560.503-1(l)(1) does not appear to be squarely on point here.  That regulation provides that when a plan "fail[s] . . . to establish or follow claims procedures consistent with the requirements" found elsewhere in the section, "a claimant shall be deemed to have exhausted the administrative remedies *available under the plan.*"  Id. (emphasis added).  But under Yates's written Plan documents, no administrative remedies were "available" to her at all.  We have previously described § 2560.503-1(l)(1) as a means by which a plan participant can be excused from an otherwise applicable exhaustion requirement.  See Grasso Enters., LLC v. Express Scripts, Inc., 809 F.3d 1033, 1039 (8th Cir. 2016) (indicating that a plan participant "may sue without exhausting plan remedies" if "the plan's failure to follow claims procedures consistent with the requirements of

see Wallace, 954 F.3d at 887 ("[W]e conclude that, because [the plan administrator] did not describe any internal claims review process or remedies in its plan document, the plan did not establish a reasonable claims procedure pursuant to ERISA regulations; therefore, Plaintiff's administrative remedies must be deemed exhausted.").

Symetra relies heavily on our decisions in Kinkead and Wert to argue that the Denial Letter Yates received "trigger[ed]" an exhaustion requirement, irrespective of whether the procedures described in the letter were also included in the written Plan documents. In Kinkead, we held that exhaustion of administrative remedies is required even when a denial-of-benefits letter does not expressly notify a plan participant that internal review procedures must be exhausted before the participant can bring an ERISA suit. 111 F.3d at 69. Notice to the participant that review procedures are available, we said, is sufficient on its own to trigger the exhaustion requirement. See id. But notably, the plan documents in Kinkead "contain[ed] provisions . . . establishing an internal procedure for further review" of denied claims. Id. at 68. Indeed, we underscored that ERISA plans "are required by law to include a claim review procedure" and that the "judicially imposed duty to exhaust" administrative remedies is "trigger[ed]" so long as a plan participant is given "notice" of that plan-based review procedure. Id. at 69–70. Thus, we affirmed the dismissal of the plaintiff's case for "failure to exhaust" her plan's "*contractual* appeal procedures." Id. at 68 (emphasis added). We did not comment on the situation presented here: whether a plan participant is required to exhaust non-contractual review procedures not included in the written plan documents.

_____

[§ 2560.503-1] denied the claimant a reasonable opportunity for full and fair review of" a denial of benefits). Here, however, the judicially created exhaustion requirement does not apply to Yates because her written Plan documents are silent as to any internal review or appeal procedures she must exhaust. Thus, our holding, while consistent with § 2560.503-1(l)(1), is not necessitated by it. And we need not address under what circumstances administrative remedies that are actually prescribed in written plan documents can still "be deemed . . . exhausted" when a plan's appeal procedures fail to comply with ERISA's implementing regulations. 29 C.F.R. § 2560.503-1(l)(1).

<u>Wert</u> also does not address the issue here.  In that case, we rejected the argument that exhaustion was not required when "contract language" in an employee benefit plan suggested that an internal review process for denied claims was "optional rather than mandatory."  447 F.3d at 1061.  We instead held that an exhaustion requirement applies so long as a plan participant "has notice of" the internal review procedures made available to her in her written plan documents, even if those documents "do not explicitly describe" such procedures "as mandatory or as a prerequisite to suit."  <u>Id.</u> at 1063.  Crucially, we reiterated that exhaustion is required "when there is available to a claimant a *contractual review procedure*" that comports with ERISA's statutory and regulatory requirements.  <u>Id.</u> (emphasis added).  But we said nothing about whether exhaustion is likewise required when a plan participant's written plan documents provide for no contractual review procedures at all.  In short, neither <u>Kinkead</u> nor <u>Wert</u> resolved the exhaustion issue presented here, and neither case controls the result.

In sum, a participant in an employee benefit plan covered by ERISA is not required to exhaust administrative remedies before bringing a denial-of-benefits suit when their written plan documents do not provide for any internal review or appeal procedures that can be exhausted.  Because Yates's suit is not barred by a failure to exhaust, we proceed to the merits of her claim.

III.

We review de novo a district court's adjudication of a denial-of-benefits claim brought under ERISA, "applying the same standard of review to the plan administrator's decision as the district court."  <u>McClelland v. Life Ins. Co. of N. Am.</u>, 679 F.3d 755, 759 (8th Cir. 2012).  A plan administrator's denial of ERISA benefits is subject to de novo review by the district court "unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  <u>Waldoch v. Medtronic, Inc.</u>, 757 F.3d 822, 829 (8th Cir. 2014) (quoting <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989)); <u>see</u> <u>McKeehan v. Cigna Life Ins. Co.</u>, 344 F.3d 789, 792 (8th Cir.

-10-

2003) (noting that an ERISA plan's "express grant of discretion" to a plan administrator otherwise "trigger[s] the deferential abuse-of-discretion standard of review"). Because Symetra and Yates agreed that "no explicit discretion-granting language is found" in Yates's written Plan documents, the district court reviewed Symetra's denial of benefits de novo. Neither party challenges that decision on appeal, and we too review Symetra's denial decision de novo. See Bond v. Cerner Corp., 309 F.3d 1064, 1066–67 (8th Cir. 2002).

Symetra argues it properly denied Yates's claim for accidental death benefits under an "intentionally self-inflicted injury" exclusion to coverage.[5] "[W]e begin [our analysis] by examining the language of the [P]lan documents." Id. at 1067. We must "interpret the terms" of the Plan "by giving the language its common and ordinary meaning as a reasonable person in [Yates's] position . . . would have understood the words to mean." Kitterman v. Coventry Health Care of Iowa, Inc., 632 F.3d 445, 448 (8th Cir. 2011) (quoting Adams v. Cont'l Cas. Co., 364 F.3d 952, 954 (8th Cir. 2004)). And because Symetra's denial of Yates's claim for benefits was based on an exclusion to coverage, Symetra "has the burden of proving that the exclusion applies." Nichols v. UniCare Life & Health Ins. Co., 739 F.3d 1176, 1184 (8th Cir. 2014).

The exclusion at issue provides that "Symetra will not pay for any loss caused wholly or partly, directly or indirectly, by . . . intentionally self-inflicted injury, whi[le] sane." According to the written Plan documents, the relevant "loss" here is Yates's husband's "[l]oss of life." Because the exclusion distinguishes between a "loss" and the "injury" causing that loss, the relevant "injury" is the cause of Yates's husband's death, namely, his heroin overdose. The dispositive question is thus whether that overdose "injury" was "intentionally self-inflicted."

---

[5]The district court concluded as a threshold matter that Yates's husband's death was an "accident" and therefore a potentially covered "loss" under Symetra's accidental death insurance policy. Symetra does not challenge that conclusion on appeal.

Our decision in <u>King v. Hartford Life & Accident Insurance Co.</u>, 414 F.3d 994 (8th Cir. 2005) (en banc), is instructive. In <u>King</u>, an employee covered by an ERISA plan died in a motorcycle accident, and his beneficiary sought accidental death benefits under the plan. 414 F.3d at 996–97. At the time of the fatal crash, the employee's blood-alcohol level exceeded the legal limit, prompting the plan administrator to deny the beneficiary's claim in part based on an exclusion to coverage for losses caused by an "intentionally self-inflicted injury, suicide, or suicide attempt, whether sane or insane." <u>Id.</u> at 997. We held that the plan administrator's denial of benefits could not be sustained because its initial reason for that decision was different from the one it advanced during litigation. <u>See id.</u> at 1003 ("We thus conclude that this case falls in the category where an administrator offers a *post hoc* rationale during litigation to justify a decision reached on different grounds during the administrative process."). But we also rejected the plan administrator's claim that the employee's death fell under the plan's "intentionally self-inflicted injury" exclusion, deeming such an "interpretation" of the plan "unreasonable." <u>Id.</u> at 1004.

We explained that the "most natural reading" of the "intentionally self-inflicted injury" exclusion did not include "injuries that were unintended by the [plan] participant, but which were contributed to by alcohol intoxication." <u>Id.</u> Implicit in this reasoning was the idea that drinking alcohol to the point of intoxication was not itself an "intentionally self-inflicted injury." <u>See id.</u> (describing a conclusion to the contrary as a "startling construction"). For instance, "[o]ne rarely thinks of a drunk driver who arrives home safely as an 'injured' party." <u>Id.</u> The question then was whether the "injuries" at issue—namely, those resulting from the employee's motorcycle crash—were "intentionally self-inflicted." <u>Id.</u> And we concluded they were not because it was undisputed that the employee "did not intend to injure himself by driving his motorcycle on the night of his death." <u>Id.</u>; <u>see</u> <u>Kovach v. Zurich Am. Ins. Co.</u>, 587 F.3d 323, 338–39 (6th Cir. 2009) (relying on <u>King</u> to hold that a plan participant's loss of a leg following a drunk-driving accident did not fall under a self-inflicted-wound exclusion to coverage because "[a]lthough [the participant] acted intentionally in drinking to excess and then riding his

motorcycle, nothing in the record indicates that he did so with a mind towards harming himself").

Like consuming alcohol, using heroin is not itself an "intentionally self-inflicted injury"; for example, a person who uses heroin to get high would not necessarily be thought of as an "injured" party. See King, 414 F.3d at 1004. Yet like the employee's consumption of alcohol in King, Yates's husband's heroin use "contributed to" an injury—in this case, an overdose. Id. And, like the employee's motorcycle crash injuries in King, Yates's husband's overdose "injury" was unintentional. Symetra does not claim that Yates's husband intended for his heroin use to result in an overdose, let alone a fatal one. Symetra nonetheless denied Yates's subsequent claim for accidental death benefits based on an "intentionally self-inflicted injury" exclusion to coverage. As in King, we reject the application of this exclusion to an injury that, while no doubt "contributed to" by heroin use, was "unintended," which is the very opposite of "intentionally self-inflicted." Id.

Symetra's proposed construction of the "intentionally self-inflicted injury" exclusion is untenable for other reasons as well. Symetra contends, for instance, that the exclusion applies to Yates's husband's death because he "purposely" used heroin. But just because the *act* of using an illegal substance is purposeful does not mean that an *injury* stemming from that act, including a fatal overdose, was too. See Kovach, 587 F.3d at 339 (rejecting a plan administrator's interpretation of a "self-inflicted-wound" exclusion to coverage for conflating "intentional *actions* with intentional *results*"). Symetra also maintains that Yates's husband, as a "longtime drug user," was surely aware of the risks of using heroin and that his "generalized knowledge" of such risks is sufficient for his death to fall under the "intentionally self-inflicted injury" exclusion. Even if we assume Symetra's characterization of Yates's husband's drug use is accurate, the argument attempts to replace an exclusion that applies only to "intentionally self-inflicted" injuries with one that also includes injuries resulting from reckless, or even negligent, conduct. See Vercellino, 26 F.4th at 469 ("We are bound to enforce the plan according to its plain language."). Using heroin is undoubtedly risky, much like driving while intoxicated. But whether

an "*intentionally* self-inflicted injury" exclusion applies depends on whether the injury in question was indeed *intentional*. It does not depend on whether the injury was generally foreseeable or even likely, or whether the injury-causing conduct was risky or even reckless. Yates's husband's death does not fall under Symetra's "intentionally self-inflicted injury" exclusion simply because it was caused by inherently risky conduct.

The plain language of Symetra's "intentionally self-inflicted injury" exclusion does not apply to unintended injuries like Yates's husband's heroin overdose. See King, 414 F.3d at 1004; see also Kitterman, 632 F.3d at 448 ("Our task is to 'interpret the terms of the plan by giving the language its common and ordinary meaning . . . .'" (quoting Adams, 364 F.3d at 954)). Thus, Symetra's denial of Yates's claim for accidental death benefits based on that exclusion was erroneous, and the district court properly concluded the same.

IV.

For the reasons explained above, we affirm the district court's judgment.[6]

_____

_____

[6]Following the district court's entry of summary judgment in her favor, Yates moved for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). The district court awarded Yates $54,058.50 in attorney's fees, denied her motion for costs, and amended its judgment accordingly. Symetra separately appealed the attorney's fees award. Yates v. Symetra Life Ins. Co., No. 4:19-CV-154, 2022 WL 1618787 (E.D. Mo. May 23, 2022), appeal docketed, No. 22-2257 (8th Cir. June 14, 2022). However, the parties have jointly stipulated that the outcome of that separate appeal depends entirely on the outcome of this one. Accordingly, because we affirm the district court's grant of summary judgment to Yates, we affirm its grant of attorney's fees to her as well.

-14-